

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**10/26/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DELAWRENCE ANDRE LEWIS | § | |
| DEBTOR(S) | § | CASE NO.   05-91520-H5-7 |
| | § | |
| ANTONIE G. FRANCIS | § | |
| PLAINTIFF(S) | § | ADVERSARY NO. 06-3438 |
| | § | |
| VS. | § | |
| | § | |
| DELAWRENCE ANDRE LEWIS | § | |
| DEFENDANT(S) | § | |

## MEMORANDUM OPINION

Before the Court is the complaint of Antonie G. Francis against debtor Delawrence

Andre Lewis, to determine the dischargeability of a debt under 11 U.S.C. § 523(a). This

Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a

core proceeding.[1]   Summary judgment on the merits was granted in Plaintiff's favor and

after trial on damages, the Court awards Plaintiff damages as stated in this opinion.

### I. Background

In March 2004, Delawrence Andre Lewis owned the Reggae Hut restaurant in

Houston, Texas.  At the time, Lewis was under court-ordered community supervision in

---

[1]

A personal injury tort claim must be tried in the district court if liquidation of the claim is for purposes of distribution in a case under Title 11.  28 U.S.C.§ 157(b)(2)(B) and (b)(5).  As liquidation of the debt alleged in the instant matter is for the purpose of determining whether the debt is non-dischargeable, rather than for the purpose of distribution from the bankruptcy estate, jurisdiction is proper in the bankruptcy court. In re Morrison, 555 F.3d 473, 478 (5th Cir. 2009) (a bankruptcy court, in addition to declaring a debt non-dischargeable, has jurisdiction to liquidate the debt and enter a monetary judgment against the debtor.)

connection with deferred adjudication of a felony charge of delivering 200-400 grams of cocaine. Antonie G. Francis was the Reggae Hut's cook. Lewis owed Francis $300.00. On March 10, 2004, around two o'clock in the afternoon, in the middle of the street outside of the Reggae Hut, Lewis shot Francis multiple times at close range, exclaiming as he pulled the trigger, "Don't h'eff with me, you Mother, you Mother eff'n Jamaican! Don't h'eff with me, never h'eff with me!"[2] After Lewis had discharged a clip of bullets and was pulling on his pocket to retrieve another clip, Francis fell to the ground, pretending to be dead. Lewis came up to him and kicked him, saying, "Die you Mother eff'n Jamaican!" After kicking Francis, Lewis, along with other men who were present, drove away from the scene of the shooting.

As a consequence of this shooting, Lewis' community supervision was revoked, he was found guilty of the pending cocaine charge, and was sentenced to 16 years in prison by the 177th Judicial District Court of Harris County, Texas.

Lewis filed Chapter 7 bankruptcy in October 2005. Francis timely filed this adversary proceeding. Thereafter, the Court granted summary judgment in Plaintiff's favor and concluded that the findings of the state court in the criminal proceeding were res judicata on the issue of liability for "willful and malicious injury" and were non-dischargeable under 11 U.S.C. § 523(a)(6). Thereafter, trial was held to quantify damages to Francis from Lewis as a result of the shooting.

---

[2]

Francis was instructed by his attorney to repeat what Lewis said as he pulled the trigger without using profanity in the courtroom.

## II.  Damage Evidence

Francis was born in Jamaica on September 20, 1960.  He came to the United States in 2001, is a permanent resident, and lives in Florida.  Francis is married with three children and one grandchild.  His wife and two of his children live in the Caribbean. His mother and his other child live in the United States.  Francis began working at the Reggae Hut in December of 2003, for $700 every two weeks.

During the shooting, Francis thought he was dying. Immediately after the shooting, Francis felt a painful burning sensation. Once Lewis left, Francis, surprising his neighbors, got up and walked home to his apartment next door to the Reggae Hut.  Francis' landlord called 911 and paramedics took Francis to Ben Taub General Hospital.   Surgeons there removed eight bullets and treated Francis for a total of nine bullet wounds.  Francis was injured in his stomach, back, hand, left knee and right leg.

Testifying at trial, Francis wept as he described his wounds shown in photographs taken two months after the shooting.[3] The photographs show Francis' stomach wound and bullet holes in Francis' back, knee, thigh, and a wound on his arm.  One injury was so close to his spine, that the hospital staff did not think that he would live, earning him the nickname "miracle man."

---

[3]

Lewis objected to admission of the photographs to the extent they support special damages, but not to the extent they support pain and suffering.  Lewis contends that mental anguish, physical impairment, lost wages and medical expenses are special damages and were not plead.  The Court conditionally admitted the photographs, exhibits p1-7, subject to Lewis' objection that the exhibits support special damages that were not plead.  In addition, the Court sustained Lewis' hearsay objection to exhibit 26, and relevancy objection to exhibits 24 and 25.

While in the hospital, Francis felt paranoid, could not sleep, experienced flashbacks of the shooting, and feared that Lewis would return.  Francis remained at Ben Taub for twelve days.  Francis was released on March 22, 2004.

After he was released from the hospital, Francis flew immediately to his mother's home in Florida.  Francis did not feel safe in Houston and he needed his mother to care for him. Francis had to use a wheelchair when traveling. Thereafter, Francis was unable to walk for eight months.

Francis' stomach injury required artificial intestine to repair.  The doctors could not close Francis' stomach wound due to the chance of infection. Only a little skin retained the intestines inside the stomach cavity.  Francis' mother cleaned his stomach wound five to six times per day.

Two days after arriving in Florida, on March 24, 2004, Francis' mother rushed him to Plantation General Hospital because his stomach wound was turning white, was draining and smelled bad.  At Plantation Hospital in Florida, Francis' stomach wound was debrided, or scraped, until it bled and he was given antibiotics.  Francis received further treatment at Broward General Hospital in emergency room visits on March 25, 2004, April 5, 2004, May 5, 2004, and June 1, 2004.  During one of these visits, his stitches were removed and Francis testified that it was so painful he felt like his stomach itself was coming out.

After the hospital visits through June 2004, Francis went to the Cayman Islands to be with his wife and children and remained there three or four months.  While there, he visited

one doctor three to four times.  He then went to Jamaica for six months and saw a doctor twice while there.

Francis returned to Houston to testify at Lewis' probation revocation hearing, but conditioned his return on the prosecution providing him with security from the airport to the hotel and back.  After testifying, Francis immediately returned to Florida and did not stay for the sentencing.

Upon his later return to the United States, Francis was treated in March of 2005, for a hernia that had developed around the wound on his abdomen.  He was instructed not to lift more than twenty five pounds and ordered to follow a highly restricted diet.

Lewis was released from prison after serving only four years of his sixteen year sentence.  Francis was frightened to learn of Lewis' release.  Thereafter, Francis received a threatening phone call and reported it to the local sheriff.

Presently, Francis has problems sleeping due to flashbacks of the shooting.  Before the incident, he was a sound sleeper, but since the shooting he wakes up at 4:00 a.m.  Francis feels afraid when he hears ordinary noises such as the movement of tree limbs.

Before the shooting, Francis was an extrovert, but now he feels paranoid in a crowd.  Francis was last present in a crowd during Christmas 2008 in Florida when someone shot a pistol in the air and he feared for his life.  Hearing gun shots, even a movie gun shot, causes Francis to suffer flashbacks, headaches, and bodily weakness.

Francis continues to experience pain from his injuries and weakness throughout his entire body.  Sharp pains occur around his navel and burning sensations in his stomach.

Francis describes the pain in his gut as nine on a scale of one to ten. He suffers this pain four to five days a week. Taking Motrin shortens the length of time before the pain passes.

Francis frequently has a burning sensation in his back. His back pain is alleviated by sitting down, but it recurs after an hour. He experiences this pain four or five times every day. Francis suffered pain in his right leg until that injury healed. When Francis travels to Jamaica, a flight of one and a half hours to two hours, he suffers from leg cramps and must sit a certain way to alleviate leg cramps.

Francis is left-handed and the gun shot to his left hand has resulted in limited movement. Francis is still learning to use his right hand. Francis' fingers ache and feel numb if he holds objects for too long. He cannot hold knives or sweep with a broom as he could before the shooting.

A bullet tore the side of Francis' left knee and, as a result, he cannot flex his knee fully. Francis suffered a chipped bone in his left knee that continues to cause him pain. When Francis stoops, he feels pain all over his body. Pain reoccurs whenever he lifts his knee. When the weather is cold, he cannot walk, cannot go to work, and thereafter, he continues to suffer pain for several days. On a pain scale of one to ten, Francis' knee pain is a ten, but medication reduces the pain to an eight.

Due to the injury to his intestines, Francis suffers from weak bowels, acid reflux, constipation, diarrhea, and an inability to control his bladder. His restricted diet requires him to avoid many of his native foods.

As a result of the shooting, Francis has disfiguring scars on his stomach which cause him embarrassment and which he tries to keep covered. He is embarrassed when people stare at him. The shooting also left scars on his legs, lower back, and left hand.

Francis testified that his connubial relationship with his wife is impaired due to the shooting because of the damaged muscles in his stomach.

While Francis played soccer weekly before the shooting, he can no longer do so because of his injuries and hernia. Playing for any time causes nausea. Francis used to scuba dive in Jamaica. Since the shooting, he cannot scuba dive because he cannot lift the tank.

Similarly, although Francis loves to dance, since the shooting his weakness and limited movement prevent dancing. He also loved to sing, but his breathing is now affected due to his injuries.

Francis was not able to work for four years following the shooting. His wife sent money for his care after he returned to the United States. Francis tried to work for his brother-in-law who pressure cleans and paints houses, but could not climb a ladder to do this job. Also, Francis was unable to hold the high pressure hose very long and had to quit. He was offered other painting jobs, but was unable to do the work. Some tasks, such as cleaning the driveway, take Francis three times as long as they did before the shooting. Just before the trial in this case, Francis was hired at a retirement home where he earns $500 to 600 every two weeks, after taxes. Francis is able to work five hours a day in this job.

In 2008, his doctor informed Francis that he needed further surgery to remove hernias which would cost $13,000. He does not have the means to pay for the surgery.

Francis incurred medical expenses of approximately $30,000 at Ben Taub General Hospital, $4,000 at Broward County Hospital, and $2,000 to $3,000 at Plantation Hospital.[4]

## III.  Debtor's Objection to the Evidence

Lewis objects to any evidence introduced at trial to support special damages because they were not pled as required by Fed. R. Civ. P. Rule 9(g). Rule 9(g) states, "If an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. Rule 9(g).

Francis' first amended complaint seeks judgment that the debt evidenced by the state court judgment in the amount of $1,000,000 in actual damages and $2,000,000 in punitive damages that Francis obtained against Lewis due to the shooting is nondischargeable, and asserts that the prior civil judgment precludes re-litigation of the issues.

Francis' first amended complaint prays for judgment for the amount of his debt, plus interest and attorney's fees and further relief as is just. Francis' complaint states that he seeks an award of actual and punitive damages, plus interest and attorneys fees, but does not otherwise specify any special damages sought.

However, the joint pretrial statement filed by Lewis and Francis on July 13, 2007, specifies numerous special damage claims. The parties' joint pretrial statement notes that Francis seeks damages, including medical expenses, from Lewis for the shooting. The joint pretrial statement and attachments identify that Francis: (1) intends to offer into evidence at trial exhibits including medical records, patient account records, and billing records from Ben

---

[4]

Francis' medical bills at Ben Taub were paid for by the Criminal Victims Fund.

Taub, Broward General Hospital, and Plantation General Hospital; (2) seeks damages for medical expenses he incurred in the amount of $28,316.08 at Ben Taub General Hospital; $1,671 at Broward General Hospital, and $2,201, at Plantation General Hospital; (3) will need future medical treatment including a hernia operation; (4) due to his injuries, cannot work; lift heavy weights; eat many of the foods he used to enjoy eating out or with his family; grasp knives or other objects or do his job as a cook; engage in sports because he can no longer run; dance; drink alcohol; engage in sex; or urinate normally; and is permanently disfigured; and (5) seeks attorneys fees incurred in the state court litigation of $13,200 , and incurred in the instant matter in the amount of $25,920, plus expenses of $1,992.63, plus additional attorneys fees through trial in the amount of $7,500.

Further, Francis' proposed findings of fact and conclusions of law and first amended disclosures pursuant to rule 7026(a)(1) filed August 8, 2008, identify the foregoing damages, and, in addition, a total of $50,600 for attorneys fees incurred in the instant matter plus expenses of $1,992.63;  actual damages totaling $2,639,498, consisting of $32,188.08 in medical costs; $159,250 for past lost earnings; $396,760 for loss of earning capacity; $1,025,650.00 for mental anguish and physical pain and suffering; and $1,025,650 for physical impairment and disfigurement; and punitive damages for a total debt of $7,918,494 with interest at the rate of 2.2% from the date of judgment.  The parties' first amended joint pretrial statement filed August 18, 2008, identifies the same exhibits for Francis as previously noted and includes, as an additional exhibit, work life estimates published by the US Department of Labor.  In addition to the foregoing, debtor himself filed Rule 26 initial

disclosures in the instant matter stating that the pleadings, discovery, and trial transcripts from the state court civil litigation between the parties are relevant documents in the instant proceeding.[5]

The purpose of compliance with Rule 9(g) is to inform the defendant of the nature of the damages claimed in order to avoid surprise and to inform the court of the substance of the complaint. Great American Indem. Co. v. Brown, 307 F.2d 306, 308 (5th Cir. 1962). When the complaint fails to enumerate special damages, pre-trial procedures such as motions for more definite statement, depositions and other discovery methods are available to a defendant to establish the damages sought. Id. Once the issues to be tried in the case have been established by pre-trial proceedings and the pre-trial order, a defendant who has failed to use available pre-trial procedures and discovery complains too late of the failure of the complaint to enumerate special damages. Id. See also Crosby v. Old Republic Ins. Co., 978 F.2d 210, 211 n.1 (5th Cir. 1992) (failure to plead special damages does not bar recovery if the defect can be cured by amendment and when a claim has been advanced by the plaintiff during pretrial conferences, the court does not err in considering the merits of the claim as though the pleadings had been amended.)

The Court finds that the failure of Francis' complaint to comply with Rule 9(g) did not prejudice Lewis or work a surprise on Lewis as to the issues to be tried or the nature of

---

[5]

Francis' original petition in state court also seeks special damages.

the damages sought.  The Court finds that the failure of Francis' complaint to specify special damages does not compel the exclusion of Francis' evidence of special damages at trial.

## IV.  Damages

Francis seeks damages for physical pain and suffering and mental anguish, disfigurement, physical impairment, and for the inability to enjoy the activities and foods he previously enjoyed, loss of earning capacity, lost wages, and for medical expenses, past and future.  In addition, Francis seeks punitive damages and attorneys' fees.

In <u>Jones v. Wal-Mart Stores, Inc.</u>, 870 F.2d 982 (5th Cir. 1989), the Fifth Circuit sets out Texas law on damage awards for mental anguish, pain and suffering, disfigurement, physical impairment, and loss of earning capacity.  Under Texas law, it is the province of the jury to set the amount of damages for speculative matters, such as pain and suffering, future disfigurement and future physical impairment. <u>Id.</u> at 987.  Texas law defines mental anguish as intense pain of body or mind or a high degree of mental suffering. <u>Id.</u> The law presumes that mental suffering will follow severe injury. <u>Id.</u>  Under Texas law, damages for loss of earning capacity need be proved only to the degree to which they are ascertainable.  <u>Id.</u> at 989.  In Texas, loss of earning capacity does not have to be based on any specific degree of physical impairment, but rather can be based on a composite of all factors affecting earning capacity. <u>Id.</u> at 989-990. Concluding that under Texas law the fact that the injured party earns as much as or more than he formerly did does not bar him from recovering for loss of earning capacity, the Fifth Circuit explained:

> An individual may have been working at 50 percent of his earning capacity before an accident, and afterwards worked at 100 percent of his reduced earning capacity. Therefore, although he is earning more, his capacity to earn has nevertheless been reduced. It may take more hours or greater effort to achieve the same amount of income. Because it is capacity, independent of salary, which may have been reduced, the actual salaries concerned are only evidence but not conclusive.

Jones v. Wal-Mart Stores, Inc., 870 F.2d 982, 990, n.4 (5th Cir. 1989).

Texas law recognizes disfigurement as a separate element of damages. Id. at 990. A damage award for disfigurement may be based upon scars and it is irrelevant whether the scar is normally covered by clothing. Id. at 991. Embarrassment is not an essential element for recovery of either past or future disfigurement, but is, rather, a variable which can increase an award for both past and future disfigurement. Id. at 991- 992.

This Court finds that, as a result of Lewis intentionally shooting Francis, Francis has suffered and will suffer in the future permanent injuries that have in the past and will in the future require Francis to incur medical expenses, that have caused Francis lost wages, that have reduced Francis' earning capacity from what it was prior to the shooting, that have and will cause Francis to be disfigured and physically impaired in the past and in the future, that have and will severely limit Francis' enjoyment of those activities and foods that he used to enjoy, and that have caused and will cause in the future physical pain and mental anguish.

The Court finds that Lewis is liable to Francis for his damages resulting from the shooting and that Francis is entitled to compensation from Lewis for physical pain and suffering and mental anguish in the amount of $1,000,000, for disfigurement, physical impairment, and for the inability to enjoy those activities and foods he previously enjoyed

in the amount of $1,000,000, for loss of earning capacity in the amount of $300,000, for lost

wages in the amount of $72,800, and for medical expenses past and future in the amount of

$43,000, for total actual damages in the amount of $2,415,800.00.

In addition, in as much as Lewis intentionally shot Francis and intended him serious

bodily injury and death, the Court finds that Francis is entitled to punitive damages from

Lewis in the amount of $2,000,000. In addition, the Court finds that Francis is entitled to an

award against Lewis for attorneys' fees in the amount of $30,000 plus expenses in the

amount of $1,992.63.[6]

The Court further finds that the damages awarded herein are not dischargeable as they

are damages for willful and malicious injury under 11 U.S.C. § 523(a)(6). Plaintiff is

**ORDERED** to submit a final judgment for entry in this case in accordance with this

memorandum opinion.

Signed this 26 day of Oct , 2009 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

---

[6]
    In addition, Francis' original petition in state court also seeks special damages. This record was admitted during the
bankruptcy proceedings.